UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUILDERS CONCRETE SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 7792 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WESTFIELD NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**M<span/>EMORANDUM O<span/>PINION AND O<span/>RDER**

Builders Concrete Services, LLC seeks a declaratory judgment that its general liability insurer, Westfield National Insurance Company, must permit it to defend against claims in an ongoing state court lawsuit using independent counsel at Westfield's expense. Doc. 1. Westfield counterclaims for a declaratory judgment that it may conduct the defense using its chosen counsel. Doc. 10 at 20-31. The parties cross-move for summary judgment. Docs. 16, 19. Westfield's motion is granted and Builders's is denied.

**Background**

The facts are almost entirely undisputed. Because the parties cross-move for summary judgment, the court ordinarily would view the disputed facts in the light most favorable to Westfield when considering Builders's motion and in the light most favorable to Builders when considering Westfield's motion. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) ("[B]ecause the district court had cross-motions for summary judgment before it, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted). But because the court will grant Westfield's motion and deny Builders's, the facts are set forth as

1

favorably to Builders as the record and Local Rule 56.1 permit. *See Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

The underlying state court suit is *Builders Concrete Services, LLC v. Focus Construction, Inc.*, 2019 L 008268 (Cir. Ct. Cook Cnty., Ill.). Doc. 33 at ¶ 21; *see* Docs. 18-2, 18-3. Focus Construction, a general contractor, hired Builders as a subcontractor to perform concrete work on a new apartment building in Evanston, Illinois. Doc. 33 at ¶ 19. That work included pouring concrete for structural columns. *Id.* at ¶¶ 20, 23. In April 2019, one of those columns buckled and failed. *Id.* at ¶ 23. Focus withheld its final payment to Builders, and Builders sued Focus for breach of contract. Doc. 18-2. Focus counterclaimed for breach of contract and negligence, alleging that Builders's faulty work caused the column to fail. Doc. 18-3.

Focus's counterclaims allege that the column's failure damaged not only Builders's own work product—the column and other concrete structures—but also parts of the building that Builders did not work on. Doc. 33 at ¶¶ 25-27; *see* Doc. 18-3 at 19 (alleging that, as a result of the column's failure, "floors [were] displaced and became out of level; windows, windowsills and frames were damaged; and miscellaneous electrical, mechanical, and plumbing elements were damaged"). Builders states, without contradiction from Westfield, that its work did not encompass those other parts of the building. Doc. 17 at 9. Many of the losses for which Focus seeks relief stem from those effects of the column's failure. Doc. 18-3 at 21-22, 26, 27.

The distinction between the damage to Builders's own work and the damage to other parts of the building likely will impact the degree to which Westfield must indemnify Builders should Focus prevail on its counterclaims. At the time the column failed, Builders carried a

2

commercial general liability policy issued by Westfield. Doc. 33 at ¶ 13; Doc. 18-1. As the parties agree, Illinois law governs the policy. Doc. 17 at 5; Doc. 20 at 2. And the default rule in Illinois is that a commercial general liability policy does not cover damage to the insured's own work—meaning that Westfield likely must indemnify Builders for damage only to other parts of the building and not to the column and Builders's other concrete work. *See Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 697 (7th Cir. 2017) ("Under Illinois law, [commercial general liability] policies are not intended to serve as performance bonds, and therefore, economic losses sustained as a result of defects in or damage to the insured's own work or product are not covered.") (internal quotation marks omitted); *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 503 (Ill. 2001) (holding that general liability policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses") (quoting *Qualls v. Country Mut. Ins. Co.*, 462 N.E.2d 1288, 1291 (Ill. App. 1984)).

Exclusions (j), (*l*), and (m) of the Westfield policy, which the parties call "business risk exclusions," reinforce the distinction drawn by Illinois law between Builders's work and other parts of the building. Doc. 18-1 at 20; *see* Doc. 17 at 7; Doc. 20 at 8. Exclusion (j) excludes from coverage "property damage" to "that particular part of real property on which you [Builders] … are performing operations" and to "that particular part of any property that must be restored, repaired, or replaced because 'your [Builders's] work' was incorrectly performed on it." Doc. 18-1 at 20. (The policy defines "your [Builders's] work" to include "work or operations performed by you [Builders] or on your behalf" and "materials, parts or equipment furnished in connection with such work." *Id*. at 31.) Exclusion (*l*) excludes "property damage"

3

to "your work" that falls within a separately defined "products-completed operations hazard." *Id*. at 20. And exclusion (m) excludes "property damage" to "impaired property" and "property that has not been physically injured" if the damage resulted from Builders's work or its failure to abide by the terms of a contract. *Ibid*.

The exact scope of the business risk exclusions does not matter for purposes of the present suit, which is not a coverage dispute. The important point here, on which both parties agree, is that the business risk exclusions leave damage to Builders's own work less likely than damage to other parts of the building to be covered by the Westfield policy. Doc. 17 at 7-8; Doc. 20 at 8. That understanding aligns with background principles of Illinois law set forth above. *See Allied Prop. & Cas. Ins. Co. v. Metro N. Condo. Ass'n*, 850 F.3d 844, 847 (7th Cir. 2017) ("Illinois courts have concluded that [commercial general liability] policies like Allied's do not cover the cost of repairing the insured's defectively completed work.") (citing *Pekin v. Richard Marker Assocs., Inc*., 289 682 N.E.2d 362, 365 (Ill. 1997)); *Ohio Cas. Ins. Co. v. Bazzi Constr. Co*., 815 F.2d 1146, 1148 (7th Cir. 1987) (collecting cases).

Builders timely tendered Focus's counterclaims to Westfield and asked for "full defense and indemnity pursuant to the terms of the Policy." Doc. 18-4 at 2. Westfield agreed to defend Builders, subject to a general reservation of rights: "[Westfield] reserves the right to deny any further duty to defend or indemnify Builders to the extent that the policy exclusions negate any potential or actual coverage." Doc. 18-5 at 15. Westfield also engaged an attorney to represent Builders in its defense of the counterclaims. *Id*. at 2.

Days later, Builders responded that it would not accept Westfield's assigned counsel but instead would "exercise its right to independent counsel of its own choosing." Doc. 18-6 at 3. Builders maintained that because the policy's business risk exclusions could "affect coverage

4

based on Westfield's reservation of rights," Westfield had a conflict of interest that entitled Builders to use its own counsel. Doc. 18-6 at 4-5. Westfield disagreed, replying: "If Builders refuses Westfield's offer of defense counsel, Westfield reserves … the right to seek a declaratory judgment with respect to its right and obligations under the policy." Doc. 18-7 at 2. Less than two weeks later, Builders filed this suit. Doc. 1.

## Discussion

The Westfield policy provides that Westfield "will have the right and duty to defend the insured against any 'suit'" seeking damages "to which this insurance applies." Doc. 18-1 at 16. Illinois law construes such provisions broadly: "An insurer's duty to defend its insured is much broader than its duty to indemnify its insured. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case *within or potentially within* the insured's policy coverage." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005) (emphasis added) (citation omitted). Westfield concedes that it has the duty to defend Builders against Focus's counterclaims. Doc. 20 at 7.

A corollary to the broad duty to defend under Illinois law is the general rule that the insurer makes all strategic decisions concerning the defense, including choice of counsel. *See Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009) ("Along with an insurer's obligation to defend its insured comes its right to control and direct the defense.") (citing *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 498 (Ill. App. 2006)); 14 Couch on Insurance 3d. § 200:1 ("Generally, liability insurance policies allow the insurer exclusive control over litigation against the insured."). The Westfield policy

5

expressly incorporates this general rule: "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." Doc. 18-1 at 16.

An exception to the general rule holds that the insured may assume control of the defense, and obtain independent counsel at the insurer's expense, if the insured's interests conflict with the insurer's interests. *See Forge Indus. Staffing*, 567 F.3d at 874 ("If there is an actual conflict of interest between the insurer and insured, the insured has the right to obtain independent counsel at the insurer's expense.") (citing *McNaughton Builders*, 843 N.E.3d at 498). This case turns on whether such a conflict exists between Builders and Westfield. Builders argues that, if Westfield controls the defense, Westfield's chosen counsel could emphasize the damage to Builders's own (uninsured) work product and downplay the damage to the other (insured) parts of the building—resulting in Builders's bearing a greater share than it should for any judgment Focus obtains on its counterclaims. Doc. 17 at 11. Or, Builders adds, Westfield's counsel could concede facts that minimize the impact of the so-called "products-completed operations hazard"—essentially an exception to the business risk exclusions—again diminishing Westfield's responsibility for any judgment. *Id*. at 12; *see also* Doc. 31 at 8-9. Westfield responds that these alleged conflicts are illusory and, in any event, insufficient to give Builders the right to retain independent counsel. Doc. 20 at 4, 10.

The Seventh Circuit in *Forge Industrial Staffing* articulated the principles that govern resolution of this dispute. In that case, a staffing agency faced employment discrimination claims from former employees, and the agency's liability insurer assumed the defense and chose defense counsel. 567 F.3d at 873. The agency argued that a conflict existed because the insurer had an incentive to shift any plaintiffs' judgment more toward punitive damages or damages for willful conduct, which the insurance policy would not cover, than toward ordinary compensatory

6

damages, which the policy would cover. *Id.* at 874. In rejecting that argument, the Seventh Circuit held that "[a]n actual, not merely potential, conflict is required to trigger the insured's right to conflict counsel" under Illinois law. *Ibid.* (citing *Murphy v. Urso*, 430 N.E.2d 1079, 1083-84 (Ill. 1981)). And the Seventh Circuit explained that an "actual conflict" exists only "when the underlying complaint contains *two mutually exclusive theories* of liability, one which the policy covers and one which the policy excludes." *Id.* at 875 (emphasis added) (citing *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F.2d 818, 825 (7th Cir. 1981)).

"Mutually exclusive theories" is a demanding standard, requiring the insured to show how the insurer, by making strategic choices in conducting the defense, could avoid *any* responsibility to pay the underlying judgment by shifting *all* losses to uncovered categories. An insured failing to meet that standard is not entitled to independent counsel: "Simply put, if no fact issues appear on the face of the underlying complaint that can be *conclusively resolved* in such a way that insurance coverage is *necessarily precluded* under the policy, then appointment of independent counsel is not warranted." *Id.* at 878 (emphasis added) (citing *Shelter Mut. Ins. Co. v. Bailey*, 513 N.E.2d 490, 496-97 (Ill. App. 1987)).

The Illinois cases cited in *Forge Industrial Staffing* illustrate how this standard is applied. In *McNaughton Builders*, a home builder was sued for damage that might have occurred before its insurance policy's effective date. 843 N.E.2d at 495-96. Depending on the exact date of the damage, then, the insurer might have had no responsibility to indemnify the builder for any part of an adverse judgment. *Id.* at 499. Because this circumstance could have allowed the insurer "to shift facts in a way that [took] the case outside the scope of policy coverage," the builder was entitled to independent counsel. *Id.* at 498. Conversely, in *Bailey*, the insured was a defendant in a personal injury suit that alleged only one theory of recovery, negligence, even though the

7

plaintiff might have characterized the insured's conduct as an (uncovered) intentional tort. 513 N.E.2d at 492-93. The insured argued that he was entitled to independent counsel because his policy did not cover intentional acts. *Id*. at 494. The court rejected the argument, explaining that the existence of a conflict must be evaluated against the face of the complaint, not hypothetical amendments. *Ibid*. Because the insured was not being "sued under multiple theories of recovery, with some of the theories being covered by the policy and others not," there was no conflict and the insured was not entitled to independent counsel. *Id*. at 494, 496.

The lesson of *Forge Industrial Staffing* is this: Unless the insurer, through its chosen counsel, can manipulate or otherwise affect the course of the underlying suit in a way that would "completely and irreparably" eliminate coverage for a judgment, the insured is not entitled to independent counsel. *Forge Indus. Staffing*, 567 F.3d at 879. Put another way, if different results in the underlying litigation affect only the relative responsibility of the insurer and the insured for the judgment without eliminating coverage completely and irreparably, the insurer retains the right to control the defense. *See Maneikis*, 655 F.2d at 825 (holding that the insured has no right to independent counsel where the conflict is "less than complete").

In its briefing, Builders gestures toward an argument that *Forge Industrial Staffing* mistook Illinois law on this point, suggesting that some Illinois cases reject the "mutually exclusive liability theory." Doc. 31 at 4; *see also id*. at 6 (citing *Nandorf, Inc. v. CNA Ins. Cos*., 479 N.E.2d 988 (Ill. App. 1985)). And at the motion hearing, Doc. 43, counsel made the point explicit, asserting that "perhaps the Seventh Circuit overstated the collective holdings of all of those [Appellate Court of Illinois] cases." But even if the Appellate Court of Illinois has sometimes applied a looser, more insured-friendly standard, this court must follow *Forge Industrial Staffing*, a precedent of the Seventh Circuit, unless the Supreme Court of Illinois

8

subsequently issued a contrary decision. *See H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 634 (7th Cir. 2020) (holding that the "precedential force" of Seventh Circuit decisions "is not impaired by a handful of Illinois Appellate Court opinions arguably stating the law differently"); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (holding that the district court must adhere to the Seventh Circuit's interpretation of state law unless and until a "decision by a state's supreme court terminates the [Seventh Circuit decision's] authoritative force"). No such contrary decision has been issued.

Westfield clearly prevails under the *Forge Industrial Staffing* standard. The parties agree that at least some of the damages alleged in Focus's counterclaims would fall within the Westfield policy's coverage. Westfield correctly observes that the counterclaims allege "damage to other parts of the project," separate from Builders's own work, "such as a steel beam which was allegedly damaged as a result of the defective concrete." Doc. 20 at 10. Builders likewise acknowledges that Westfield's chosen counsel could seek only to diminish Westfield's responsibility to indemnify Builders for a judgment on Focus's counterclaims, not to eliminate it entirely. Doc. 17 at 11 ("Westfield's interests are furthered by maximizing the application of the exclusions to push more potential damages outside of coverage."); Doc. 31 at 7 (arguing that Westfield could attempt to exclude "a large portion" or "a majority" of damages "as an uncovered business risk").

The parties' agreement on these points is correct. Focus's counterclaims allege damages to other parts of the building. Doc. 33 at ¶ 26. And, as noted, plentiful authority supports Westfield's duty to indemnify such damages. *See*, *e.g.*, *Nat'l Decorating Serv.*, 863 F.3d at 697; *Eljer Mfg.*, 757 N.E.2d at 503. It therefore does not surprise that, in its reply brief, Builders finds it necessary to contend that Illinois law does not, in fact, impose the "mutually exclusive

9

theories" standard to determine when an insured is entitled to independent counsel. Doc. 37 at 4. But that standard is the correct one under *Forge Industrial Staffing*, and because Builders fails to meet it, Westfield may continue to control the defense using its chosen counsel.

Builders argues that *R.C. Wegman Construction Co. v. Admiral Insurance Co.*, 629 F.3d 724 (7th Cir. 2011), favors the contrary result. According to Builders, *R.C. Wegman* held that there was a conflict of interest merely because a large portion of the damages in the underlying suit might be uncovered. Doc. 31 at 6-7; Doc. 37 at 7. Builders misreads *R.C. Wegman*. That case dealt with an entirely different basis for a conflict: the known likelihood of a jury verdict significantly above the policy limit, creating a situation where the insurer was "[g]ambling with [the] insured's money." 629 F.3d at 729. Builders does not suggest that covered damages arising from Focus's counterclaims could exceed the Westfield policy's limit. Moreover, the insured in *R.C. Wegman* was suing its insurer for breach of fiduciary duty *after* the jury had rendered a verdict, so the conflict of interest had become clear in retrospect. *Id*. at 725, 729. Here, by contrast, Builders—like the insured in *Forge Industrial Staffing*—asks the court to predict, based only on a pleading, that a conflict will arise. *Forge Industrial Staffing* is the case on point here, and it dictates a ruling in Westfield's favor.

## Conclusion

Westfield's summary judgment motion is granted, and Builders's summary judgment motion is denied. The court declares that Westfield may proceed with the defense of Builders using Westfield's chosen counsel.

September 14, 2020

                                                        United States District Judge